**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

CKG, INC.; and                                                                                                          PLAINTIFFS
KIMBERLY CARROL[1]

v.                                                  No. 4:17CV00019 JLH

BUDGET MAINTENANCE CONCRETE SVC, INC.;
ORLANDO LAW OFFICES, PC;[2] and
CHRISTOPHER M. GARRELL                                                                              DEFENDANTS

**OPINION AND ORDER**

The plaintiffs commenced this action against Budget Maintenance Concrete SVC, Inc., Orlando Law Offices, P.C., and Christopher M. Garrell alleging causes of action for common law fraud and deceit and for violating the Arkansas Deceptive Trade Practices Act. Garrell and Orlando Law Offices argue that this Court does not have jurisdiction over them and have moved to dismiss the complaint. *See* Fed. R. Civ. P. 12(b)(2). For the following reasons, the motion to dismiss is granted.

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing its existence. *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir. 1990). The burden is minimal and requires only that a plaintiff make a prima facie showing of jurisdiction to defeat a 12(b)(2) motion to dismiss. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). This means that a plaintiff must state sufficient facts to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). In ruling on the defendants' motion to dismiss,

---

[1] Plaintiffs' complaint and brief spells this last name as "Carroll."

[2] Defendants' brief states the firm is properly named "Orlando Law Offices, P.C."

this Court is not limited to consideration of the pleadings alone but can test the plaintiffs' prima facie showing by affidavits and exhibits presented with the motion and in opposition of the motion. *See id*.

The following statement of facts is taken from the pleadings, affidavits, and exhibits before the Court. These facts are construed in the light most favorable to the plaintiffs and all factual conflicts are resolved in favor of them. *Epps*, 327 F.3d at 647.

In the summer of 2015, CKG, Inc., hired Budget to perform subcontract work on a project in Maumelle, Arkansas. Document #2 at ¶¶ 6, 8. Budget was supposed to complete the subcontract work for $42,500. *Id.* at ¶ 6. However, before the work was completed, Budget abandoned the Maumelle project and left Arkansas. *Id.* at ¶ 10. The work that Budget had done was unusable, and CKG paid in excess of $50,000 to have the work redone. *Id.* at ¶¶ 10, 15. After Budget abandoned the project, Kimberly Carroll, CKG's President, learned that Budget was not a licensed contractor in the state of Arkansas. *Id.* at ¶¶ 11-12. CKG did not pay Budget for any of its work. *Id.* at ¶ 13.

In September 2015, a law firm in Fort Smith, Arkansas, sent CKG a lien notice on behalf of Budget. *Id.* at ¶ 16. CKG's attorney responded that the lien notice was improper because, amongst other reasons, Budget could not demand payment as an unlicensed contractor in Arkansas. *Id.* at ¶ 17 (citing Ark. Code Ann. § 17-25-103). The Fort Smith law firm did not file the lien and withdrew its demand for payment. *Id.* at ¶ 18. Nearly a year later in May 2016, CKG was contacted by a law firm in Texas that sought collection on behalf of Budget. *Id.* at ¶ 19. CKG's attorney again explained that Budget was not entitled to, nor could it demand, payment under Arkansas law. *Id.* at ¶ 20. Near the end of July 2016, CKG received yet another collection letter regarding Budget's work on the Maumelle project. *Id.* at ¶ 21. This time, the letter was sent by Christopher Garrell, a

lawyer with the Orlando Law Offices, P.C. *Id*. As he had done with the other firms, CKG's attorney informed Garrell that the debt was not collectible under Arkansas law. *Id*. at ¶ 22. But he also warned Garrell that CKG would file suit for fraud and violation of the Arkansas Deceptive Trade Practices Act if Garrell pursued collection on the debt. *Id*.

CKG alleges that after Garrell and the Orlando Law Offices were "provided actual and constructive notice of the illegality of the contract and the unlicensed work of Budget, [they] fulfilled their part of the fraudulent scheme and filed suit against Kimberly Carroll individually and CKG in Pennsylvania." *Id*. at ¶ 23. CKG filed suit against Budget, Garrell, and the Orlando Law Offices for common law fraud and deceit as well as violating the Arkansas Deceptive Trade Practices Act. *Id.* at ¶¶ 24-35. According to the complaint, Budget planned to defraud the plaintiffs and "coerce attorneys in Arkansas and Texas to cooperate with [its] fraud." *Id.* at ¶¶ 25-27. When those firms did not cooperate, so says the complaint, Budget found a "willing accomplice" and "willing co-conspirator" in Garrell and his firm, the Orlando Law Offices. *Id*. at ¶ 28.

Garrell and the Orlando Law Offices now move to dismiss the suit against them, arguing that this Court does not have personal jurisdiction over them. Garrell has submitted an affidavit stating that he is a resident of Pennsylvania, he is licensed to practice law in Pennsylvania but not Arkansas, he has never been admitted to practice law in any Arkansas court, he does not own property in Arkansas, he has never had a business location in Arkansas, he does not advertise his legal services in Arkansas, he did not travel to Arkansas for any activities related to this case, and he prepared all documents relating to this case in Pennsylvania. Document #3-1. Eugene Orlando, Jr., on behalf of the Orlando Law Offices, submitted an affidavit stating that the firm is a Pennsylvania professional corporation with its principal place of business in Pennsylvania, the firm does not own

3

property in Arkansas, the firm has never had an office location in Arkansas, the firm does not advertise in Arkansas, and the firm does not have any employees that traveled to Arkansas for matters related to this case. Document #3-2

A court's power extends only as far as its reach. The reach of federal district courts is limited by both subject-matter jurisdiction and personal jurisdiction. *See* U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1330 *et seq.*; U.S. Const. amend. XIV; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). Courts conduct a two-step analysis for personal jurisdiction, asking first whether the exercise of personal jurisdiction is permitted by the forum state's long-arm statute and second whether it is permitted by the due process clause of the U.S. Constitution. *See Hutson v. Fehr Bros.*, 584 F.2d 833, 835 (8th Cir. 1978) (en banc). Arkansas's long-arm statute is coextensive with the constitution. Ark. Code Ann. § 16-4-101; *Davis v. St. John's Health Sys., Inc.*, 348 Ark. 17, 23, 71 S.W.3d 55, 58 (2002). Accordingly, this Court need only determine whether the exercise of jurisdiction over these defendants offends due process. *See Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006).

Under the due process clause, the exercise of personal jurisdiction over a nonresident defendant is permissible if the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316, 66 S. Ct. at 158 (quotation and citations omitted). The defendant's conduct and connection with the forum state must be such that he reasonably anticipates being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985). A defendant should reasonably anticipate such summons when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958) (citation omitted).

To assess the sufficiency of a nonresident defendant's contact with a forum state, the Eighth Circuit has directed courts to consider the following five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Aftanase v. Econ. Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965). The first three factors are primary factors. *Id.* The third factor distinguishes whether jurisdiction is specific or general.[3] *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 n.4 (8th Cir. 1995). Here, the alleged contacts are related to the dispute that resulted in this suit, and therefore the plaintiffs are relying on an assertion of specific rather than general jurisdiction.

The above test is flexible and not meant to be used like a slide rule. *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987). The touchstone of the test is fundamental fairness under the due process clause. *See Int'l Shoe Co.*, 326 U.S. at 316, 66 S. Ct. at 158. Fairness is found most firmly when the facts and circumstances of each case are considered. In this case, the record reflects that Garrell and the Orlando Law Offices have one contact with Arkansas: the collection letter Garrell sent the plaintiffs. Generally phone or mail contacts alone are insufficient to justify exercise of personal jurisdiction. *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002). A single

---

[3] A forum exercises specific jurisdiction over a defendant in causes of action arising from or related to the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 1872 n.8, 80 L. Ed.2d 404 (1984). A forum exercises general personal jurisdiction over a defendant in causes of action *not* arising out of or related to the defendant's contacts with the forum. *Id.* at n.9.

5

contact can support jurisdiction, however, if it creates a "substantial connection" with the forum. *Rudzewicz*, 471 U.S. at 475 n.18, 105 S. Ct. at 2184 n.18. For example, an intentional tort within the forum may be sufficient to support jurisdiction even if it is the defendant's only contact with the forum state. *See, e.g.*, *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991) (drawing a distinction between negligence actions and those in which an intentional tort is alleged). In such a case the nature and quality of the contacts with the forum state, the relationship of the cause of action to the contacts, and the interest of the forum state in providing a forum for its residents all weigh in favor of the exercise of jurisdiction. *Id.* at 1391 (explaining that when an intentional tort is alleged, courts still use five-factor *Aftanase* test but consider additional factors presented by the tort).

The plaintiffs argue that Garrell and the Orlando Law Offices subjected themselves to suit in Arkansas by choosing to transact collection activities here in furtherance of Budget's fraudulent scheme, *i.e.*, the single collection letter created sufficient minimum contacts with Arkansas. Document #6 at ¶ 7. The plaintiffs allege that Garrell and the Orlando Law Offices exposed themselves to an action for fraud by "forgo[ing] the warnings of the possible violations of the ADTPA" and "engag[ing] in the furtherance of the actions of Budget for fraudulent inducement." *Id.* at ¶ 5. After the "warnings of possible violations of the ADTPA," Garrell and the Orlando Law Offices had no contact with Arkansas. As alleged in the complaint, therefore, the fraudulent conduct of Garrell and the Orlando Law Offices did not take place in Arkansas. The complaint echoes this point in alleging that "Garrell and Orlando [Law Offices] fulfilled their part of the fraudulent scheme

and filed suit against Kimberly Carroll individually and CKG in Pennsylvania to try to enforce the VOID contract and to try to extort funds from Kimberly Carroll and CKG" *after* "being provided actual and constructive notice of the illegality of the contract and the unlicensed work of Budget." Document #2 at ¶ 23.

Thus, Garrell and the Orlando Law Offices' sole contact with Arkansas is not alleged to have been part of Budget's fraudulent scheme. Instead, the complaint alleges that the filing of the suit and the activity following the response letter from CKG's attorney is what gives rise to Garrell and the Orlando Law Offices' liability. Those actions occurred outside of Arkansas. The tortious conduct allegedly committed by these defendants was not committed in Arkansas. *See Walden v. Fiore*, 134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014) ("A forum state's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct that creates the necessary contacts with the forum."). The weighing of conveniences seem evenly split: the defendants are residents of Pennsylvania, and the plaintiffs are residents of Arkansas. And while Arkansas may have an interest in protecting the plaintiffs from fraud, it is no less true that Pennsylvania has an interest in preventing fraud from being perpetrated through its courts. Consequently, the collection letter that Garrell sent the plaintiffs did not create a substantial connection with Arkansas, such that maintenance of the suit in Arkansas comports with the due process clause.

Moreover, even if the plaintiffs intended to allege that the collection letter was part of the fraudulent scheme, Arkansas law would not support that allegation. The common law tort of deceit requires (1) a false representation made by the defendant, (2) knowledge or belief on the part of the defendant that the representation is false ("scienter"), (3) that the defendant intended to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, (4) justifiable reliance

7

upon the representation, and (5) damage to the plaintiff, resulting from such reliance. *MFA Mut. Ins. Co. v. Keller*, 274 Ark. 281, 284, 623 S.W.2d 841, 842-43 (1981). The plaintiffs' complaint does not allege that Garrell or the Orlando Law Offices knew that the collection letter contained a false representation, nor does it allege that the plaintiffs were damaged by relying on any misrepresentations in the collection letter.

Nor does Arkansas law support the plaintiffs' ADTPA claim against Garrell and the Orlando Law Offices. In *Preston v. Stoops*, the Arkansas Supreme Court held that "the ADTPA does not apply to the practice of law." 373 Ark. 591, 594, 285 S.W.3d 606, 609 (2008). That holding was reiterated in *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, 372 S.W.3d 324, a case involving an attorney engaged in debt collection. The Arkansas Supreme Court clarified that *Preston*'s holding applied broadly, explaining that "any attempt by the General Assembly to control the practice of law would be a violation of the separation-of-powers doctrine because oversight and control of the practice of law is under the exclusive authority of the judiciary." *Id.* at *14-15, 372 S.W.3d at 334.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is GRANTED. Document #3. The plaintiffs' claims against Orlando Law Offices, P.C., and Christopher M. Garrell are dismissed without prejudice.

IT IS SO ORDERED this 9th day of February, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE